# WASHINGTON COUNTY.

MARY A. HAZARD *et al. vs.* ATTMORE ROBINSON *et als.*
No. 105.

MARY A. HAZARD *et al. vs.* ATTMORE ROBINSON *et al.*
No. 106.

JOHN G. CLARKE, Administrator of JONATHAN N. HAZARD
*et al. vs.* ATTMORE ROBINSON *et al.*　No. 113.

In Rhode Island, when, on a bill to redeem, a decree is entered that the complainant may redeem by paying the amount found due on the mortgage, and the decree fixes the time for such payment, and provides that, in default of payment within the time fixed, the bill "from thenceforth stand dismissed out of court with costs," such a decree is a final decree.

In case payment is not made within the time fixed, neither affidavit of non-payment nor a formal decree of dismissal is needed.  The decree already entered acts as a decree of fore-closure.

Foreclosure without sale is a satisfaction of the debt secured only to the amount of the value of the property taken in foreclosure.

When, after foreclosure without sale, the mortgagee brought suit and obtained judgment, not for a deficiency, but for the whole amount of the debt, —

*Held*, that obtaining the judgment was presumptively a waiver or disclaimer of the fore-closure, and presumptively left the mortgage subject to redemption in equity.

A. mortgaged certain shares of corporate stock, which, although personalty, were by the charter of the corporation transferable by deed, and then by deed assigned his property for the benefit of his creditors to B.  B. conveyed this property to C. by deed, setting forth the same trusts as those under which B. had received it from A.  C. died.

*Held*, on a bill to redeem brought by the administrator of A., that the legal title to the shares of stock passed to C., and that the personal representative of C. was a necessary party to the suit.

BILLS IN EQUITY to redeem a mortgage and for an account. On demurrer and pleas to the bills.

*Providence, January* 23, 1886.　STINESS, J.　Upon pleas and demurrers to three bills in equity, common questions arise.　Bill 105 is brought by the administrator, assignee, and heirs at law of Jonathan N. Hazard, deceased, claiming the right to redeem a mortgage given by him upon shares of stock in the Narragansett Pier Company.　Hazard brought a bill to redeem in his lifetime, and, under a rule of court, the matters of difference between the

parties were submitted to a referee, who reported the sum due from Hazard to the defendant, Attmore Robinson, including the amount due on the mortgage notes. A decree was entered in the suit to redeem, requiring that amount to be paid on or before April 4, 1864, or, upon default, that the bill be dismissed; and this bill alleges that said Hazard paid said notes in full, and satisfied the executions issued under the petitions for rule. The answer sets up, by way of demurrer, that there is no allegation in the bill that such payment was made within the time limited in the decree to redeem; and, denying such payment, sets up the default by way of plea, averring that the judgments are still outstanding, and that at the November Term, A. D. 1884, of the Court of Common Pleas in Washington County, in a suit brought upon the judgment entered upon the award of the referee, against the administrator of Jonathan N. Hazard, judgment was recovered for the amount of said former judgment and interest.

In bill 106, the complainants claim to be the owners of stock in the Narragansett Pier Company, derived from Jonathan N. Hazard, and pray for an account and payment of a certain judgment recovered by said company against said Attmore Robinson. The answer denies that the complainants are stockholders in the company, setting up by way of plea that, under the decree above referred to, the mortgage of Jonathan N. Hazard upon his stock had been foreclosed.

Bill 113 is by the administrator and assignee of Jonathan N. Hazard, reciting the proceedings in his bill to redeem, and claiming the right to redeem the mortgage upon the grounds set forth in bill 105; also claiming the right to redeem by reason of the suit brought by the respondent, Attmore Robinson, in the Court of Common Pleas, for the full amount of the award referred to in the answer to that bill. The answer sets up, by way of plea, that neither Jonathan N. Hazard, nor any one for him, paid the amount required to be paid by the decree, within the time named therein, whereby redemption is barred.

The first question which arises, applicable to each of the three bills, is: Upon this record has the mortgage been foreclosed, so that the mortgagor and those claiming under him are barred of their right of redemption? When a bill to redeem a mortgage is

dismissed for failure to pay the amount due, within the time required by the decree, such dismissal operates as a foreclosure. 2 Jones on Mortgages, § 1108, and cases cited. But the complainant contends that, after such failure, a formal decree dismissing the bill must be entered in order to complete the foreclosure. This has been the practice in England. 2 Daniell Chanc. Plead. & Prac. * 398 ; Seaton's Forms, * 147 v. and note. The reason for the practice, evidently, is to show by the record that the mortgagor has failed to redeem, and that his right to redeem has become barred by a final and absolute dismissal of his bill, operating as a foreclosure. But we do not see that the reason requires the rule. Possession by the mortgagee, after the time for redemption has gone by, would show that the mortgagor had failed to redeem. Or, if the mortgagor in possession should refuse to surrender to the mortgagee, a judgment in ejectment would be evidence of equal value with the decree. Without doubt, an affidavit of non-payment, with the consequent dismissal of the bill, is a convenient way of showing a complete foreclosure ; but we are not prepared to say that there cannot be a foreclosure without this. The entry of a final order of dismissal is purely formal, it will be done as of course ; and to hold that a bill to redeem is kept open by the non-observance of a mere form, after the mortgagor's own default, is not in accordance with the more liberal practice of modern days. Moreover, we do not think that such has been the practice in this country. The only case to which we have been referred, where the strict English rule was followed, is *Bolles* v. *Duff*, 43 N. Y. 469. In that case, however, the court say that the suit to which the rule should apply was not merely a suit to redeem, and that the court, in making the decree, " did not, probably, have their attention directed to its effect, in case the plaintiff should be unable to pay within the specified time." The rule seems to have been seized upon by the court to protect the equities of the parties in the case before them. In *Stevens* v. *Miner*, 110 Mass. 57, it was held that no decree dismissing the bill is necessary in that State. In many cases it is not clear, from the language used, whether reference is made to a special order, or to the alternative order of dismissal contained in the decree to redeem.

Our statute, Pub. Stat. cap. 176, § 13, relating to the redemption of mortgages, first appears in the Digest of 1798, where, p. 274, it provides that the court shall, " according to the usages in chancery, and on the principles of equity, proceed to render judgment on such bill, which shall be final." So far as we are able to learn, it has not been the practice, under this statute, to enter a formal order of dismissal in bills to redeem. The decree that, upon default of the mortgagor to make payment within the time required, his bill " do from thenceforth stand dismissed out of this court with costs," has been treated as a final decree. We think, therefore, that the omission of a final order to dismiss the bill of Jonathan N. Hazard, does not operate to keep the redemption open.

The next question is : Whether the mortgage is still redeemable by reason of the suit and judgment for the whole of the mortgage debt. Strict foreclosures have not been considered with favor, and within the last century they have almost entirely given way to foreclosures by sale. A strict foreclosure has been thought to leave no certain measure of relation between the amount of the debt and the value of the property. It is evident, however, that a mortgagee ought not to have both the debt and the estate. It was formerly held that a mortgagee, who took the property, took it in satisfaction of the debt, and that any action upon the debt opened the foreclosure and let in the right to redeem. Kent says : " The better opinion is that after a foreclosure, with or without a subsequent sale, the mortgagee may sue at law for the deficiency, to be ascertained in the one case by the proceeds of the sale, and in the other by an estimate and proof of the real value of the pledge at the time of the foreclosure. Whether the action at law will open the foreclosure and let in the equity of redemption, is an unsettled question." 4 Kent Comment. 12th ed. *182, and cases cited. See, also, Hilliard on Mortgages, cap. 36. In case of a sale under a foreclosure, there is no question that a mortgagee may sue for a deficiency. The point of doubt seems to be, whether such a suit, where there has been no sale, opens the estate to redemption. We do not see why it should have that effect. With or without a sale the foreclosure is not, in fact, a satisfaction of the debt to any greater extent than the value of

the property. That value may be as well shown in a suit for a deficiency, without a sale, as it is in other suits where the value of property has to be proved. The mortgagor is no more likely to be injured by inadequate proof of the value of the property than he is. by an inadequate price at a sale. If it be conceded that the property itself is only payment *pro tanto*, we see no reason why a mortgagor should not be liable for a deficiency when there has been no sale, as well as when there has been one. It is no longer a question of right, but of evidence. If, therefore, the judgment in this case had been for a deficiency only, we should hesitate to say that the bringing of a suit for such deficiency re-opened the foreclosure. But, however this may be, there can be no question that a mortgagee cannot have the whole estate and the whole debt, a double satisfaction. The recovery of judgment for the whole mortgage debt is inconsistent with its satisfaction, in whole or in part, by foreclosure. It is, presumptively at least, a waiver or disclaimer of foreclosure, which leaves the mortgage redeemable in equity, nothing being set up in rebuttal or expla-nation of a presumption of waiver, if the presumption can be rebutted, a question which we do not decide.

The next question is, What parties are entitled to redeem? Generally, those who have an interest in the property, and who would be losers by the foreclosure. 2 Jones on Mortgages, § 1055. The shares of stock, in this case, are personal property. They would not therefore pass to the widow or heirs at law of Jonathan N. Hazard, an administrator having been appointed. The shares are made, by the charter, transferable by deed, in the same man-ner as real estate. In 1864, Hazard made an assignment to John C. Hazard, in trust for the benefit of his creditors. The latter, a few weeks after, conveyed to Elisha R. Potter upon the same trusts. These deeds undoubtedly carried the legal title to the shares, according to the terms of the charter. John C. Hazard is already a party; also the administrator of Jonathan N. Hazard, who, aside from any question about the mortgage, would hold an equitable interest in the stock. But the legal title conveyed to Elisha R. Potter is not represented. If this were the hearing of the cause, the defendant might insist that there was a want of parties; that the suit could not proceed without the holder of

the legal title. But this legal title is set up in bar of all interest in the complainants. As we cannot say that they have no interest, the plea must be overruled. *Winterbottom* v. *Tayloe*, 2 Drewry, 279.

As a result of these conclusions, the demurrer to bill 105, and the plea to bill 106, must be sustained, and the plea to bill 113 overruled. *Decrees accordingly.*

*Amasa M. Eaton* and *Josiah Porter*, for complainants.

*Charles H. Parkhurst*, for respondents, in No. 105.

*Amasa M. Eaton, Joseph C. Ely*, and *Josiah Porter*, for complainants.

*Charles H. Parkhurst, Elisha C. Clarke*, and *B. W. Case*, for respondents, in No. 106.

*Amasa M. Eaton*, for complainants.

*Charles H. Parkhurst*, for respondents, in No. 113.